## IN THE UNITED STATES DISTRICT COURT
## FOR EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN KOFFLER | : | |
| 100 Grays Lane, Unit 105 | : | CIVIL ACTION |
| Haverford, PA 19041 | : | No.: |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| GRAYS LANE HOUSE | : | |
| CONDOMINIUM ASSOCIATION, | : | |
| INC. | : | |
| 100 Grays Lane | : | |
| Haverford, PA 19041 | : | JURY TRIAL DEMANDED |
| Defendant. | : | |

## CIVIL ACTION COMPLAINT

### INTRODUCTION

1.  This is an action for declaratory relief, injunctive relief and damages against Grays Lane House Condominium Association, Inc. ("Defendant"), for housing discrimination based on the disability and sexual orientation of Plaintiff Jonathan Koffler ("Plaintiff"). Plaintiff, who suffers from severe anxiety, depression, and panic attack symptoms, requested a reasonable accommodation.

2.  This action is brought under the Fair Housing Amendments Act, 42 U.S.C.A. §§ 3601 *et seq.* (hereinafter "FHAA")

### JURISDICTION AND VENUE

3.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, § 1337, and § 1343(a), and 42 U.S.C. § 3613 as the claims alleged herein arise under the laws of the United States, specifically the FHAA.

4.   Venue is proper in the Eastern District of Pennsylvania because the events and/or omissions giving rise to Plaintiff's claims occurred within this district, the property that is the subject of the action is situated in this district, and Defendant conducts business in this district.

## PARTIES

5.   Plaintiff Jonathan Koffler is, and at all times relevant herein was, a resident of the Commonwealth of Pennsylvania. Mr. Koffler has been diagnosed with acute anxiety. Mr. Koffler is treated for panic attack symptoms which include racing heart, dizziness, difficulty breathing, and weakness. Mr. Koffler's disability limits his major life activities, including his ability to work and think. When Mr. Koffler is experiencing a panic attack, his ability to think, sleep, work, and/or eat can and has been impaired and substantially limited for several hours. Mr. Koffler is, and at all relevant times herein was, an individual with a disability as that term is defined by the FHAA (42 U.S.C. § 3602(h); 24 C.F.R. § 100.201).

6.   Plaintiff's emotional support animal has been an integral part of his long-standing support system, preventing symptoms and acute anxiety attacks caused by his brain chemical imbalance.

7.   Plaintiff resides at 100 Grays Lane Unit 105, Haverford, PA 19041 with his husband, Robert Katz.

8.   Defendant Grays Lane House Condominium Association, Inc. is a corporation domiciled in the Commonwealth of Pennsylvania with an address of 100 Grays Lane, Haverford, PA 19041.

9.   Grays Lane House is a six-story condominium complex, containing 48 units located at 100 Grays Lane, Haverford, Pennsylvania.

10. The condominiums at Grays Lane House are "dwellings" within the meaning of 42 U.S.C.S. § 3602(b).

11. Defendant, Grays Lane House Condominium Association ("Defendant"), is the condominium association governing Grays Lane House.

### STATEMENT OF FACTS

12. Mr. Koffler suffers from acute anxiety and maintains an emotional support dog at the recommendation of his therapist, Julie Guido. Mr. Koffler's emotional support dog is essential to alleviating the symptoms of his disability.

13. On January 22, 2022, Mr. Koffler and Mr. Katz executed an agreement of sale with the estate of the former owner  for the condominium located at 100 Grays Lane, Unit 105, Haverford, PA 19041.

14. Mr. Koffler believes and therefore avers that as early as November 2021, Defendant maintained a "No Pet" Policy.

15. On January 26, 2022, Mr. Koffler submitted, through his real estate agent, Amy Jerrehian, a request for an emotional support animal to LouAnne Leon, Operations Manger. Ms. Jerrehian also provided a letter from Ms. Guido detailing Mr. Koffler's acute anxiety and his need for an emotional support dog. Ms. Leon provided Ms. Jerrehian with a Form to Request Reasonable Accommodation to No-Pet Rule.

16. Mr. Koffler's requested emotional support dog is a hypoallergenic toy poodle.

17. On February 1, 2022, Defendant changed its Reasonable Accommodation Policy

for Assistance Animals Service and/or Emotional. The revised Policy states in relevant part:

> Any owner/tenant, who has been provided with a reasonable accommodation for the possession of a service or emotional support animal is fully responsible for its maintenance and behavior. No such animal shall be permitted in any portion of the common areas unless on a leash or being carrier. Said owner/tenant shall indemnify and hold harmless the Council, Grays Lane House Condominium Association, Inc., and any other individual unit owner from and against any loss or liability to persons and/or property of any kind arising out of the presence of any such animal on the premises.

18. Defendant's revised Policy further states that any information provided to the Council in connection with a request for a reasonable accommodation will be kept confidential, as required by law.

19. On February 3, 2022, Mr. Koffler completed and submitted to Ms. Leon the Form to Request Reasonable Accommodation to No-Pet Rule, which was supplemented with the emotional support dog's Lifetime License Certificate and vaccine records.

20. On the same day, Fred Wentz, the Vice President of the Gray Lane Condominium Council ("Council"), stated in an email to Louise Strauss, President of the Council, that Mr. Koffler's form "doesn't even attempt to fulfill the requirements of the law." Ms. Strauss forwarded Mr. Wentz's email to Ms. Jerrehian, effectively denying Mr. Koffler's request for a reasonable accommodation.

21. Ms. Jerrehian responded to Ms. Strauss's email seeking clarification as to whether the Council denied Mr. Koffler's request for a reasonable accommodation and urging the Council to grant Mr. Koffler's request. Ms. Jerrehian further advised that Defendant's denial of Mr. Koffler's request for accommodation were in violation of the state and federal

fair housing laws. Ms. Jerrehian requested a reply by February 8, 2022.

22. Receiving no response from the Council, Ms. Jerrehian sent another email to the Council seeking resolution of Mr. Koffler's request for a reasonable accommodation.

23. On February 11, 2022, Mr. Wentz advised Mr. Koffler via email that Ms. Guido's letter was insufficient to allow Mr. Koffler to qualify for a reasonable accommodation. Specifically, Mr. Wentz stated that Ms. Guido did not indicate that Mr. Koffler had a disability as defined by the Fair Housing Act.

24. On the same day, Ms. Jerrehian received an email from Ms. Leon stating that all future communications concerning Mr. Koffler's emotional support animal must be conducted directly between the Council and Mr. Koffler.

25. The Council's denial of Mr. Koffler's request for a reasonable accommodation has impeded his ability to move into his new residence and/or caused unnecessary consternation and distress.

26. On February 12, 2022, Mr. Koffler submitted to the Council a revised letter from Ms. Guido which clearly indicated that Mr. Koffler had a mental impairment which substantially limits one or more of his major life activities. Ms. Guido again indicated that Mr. Koffler's emotional support dog has been an integral part of his long-standing support system and has allowed Mr. Koffler to maintain a sense of calm and order in his everyday life.

27. On February 16, 2022, the Council issued Mr. Koffler a document titled "Waiver of the No Pet Policy for Service/Emotional Support Animal." The terms and conditions of the waiver provide that the emotional support dog will not be permitted in any common area

of the building, including hallways, the lobby, elevators, the Common Room, patios, and balconies and porches immediately connected to each unit.

28. The terms and conditions of the February 16, 2022, "Waiver of the No Pet Policy for Service/Emotional Support Animal" further provide that the dog must enter and exit the building only by being carried by hand, placed in a dog carrier, or on a leash, and that the dog may only enter or exit the building through the garage of the two stairwells closest to Mr. Koffler's unit. The waiver further required Mr. Koffler to have an air purifier operating year-round in his unit and to place a door sweep on the bottom of the doors to his unit.

29. The waiver also prohibited Mr. Koffler from placing any items related to the dog in any common storage areas.

30. The waiver further provided that all dog waste and related items must be double bagged and disposed of off Defendant's premises. Mr. Koffler was prohibited from disposing of any dog waste items in any of Defendant's receptacles, including dumpsters or trash cans in the basement or garage. In the event that the dog urinated or defecated on any paved common area surface of Defendant's property, the waiver required Mr. Koffler to disinfect the area immediately using management-approved cleansers and disinfectants. In the event that any damage to the surface of a patio occurred, the waiver imposed upon Mr. Koffler the responsibility of repairing the surface of the patio using management-approved additives.

31. The waiver stated that maintenance requests concerning Mr. Koffler's unit may be delayed if the Association does not have on premises a maintenance person who is not

allergic to animals.

32. The terms and conditions of the waiver further provided that Mr. Koffler and Mr. Katz shall be jointly and severally responsible for and shall indemnify and hold harmless the Council, the Association, and any other unit owner, employees and independent contractors from and against any loss or liability to persons or property which is directly attributable to the presence of the dog.

33. On February 18, 2022, Mr. Koffler informed the Council via email that he would not sign the waiver, as it denies him equal use of the premises because of his disability and violates the FHA.

34. On February 22, 2022, the Council, by unanimous vote at a Council meeting, approved an amendment to Rule 21 of the Rules of Grays Lane House, which governs assistance and service animals.

35. The amendment to Rule 21 states in relevant part:

> Any Unit Owner who permits or maintains an animal on the Property, for which there has not been executed a signed approval by Council as an assistance or service animal under the law, shall be penalized with a fine of $250 per day for the time the unauthorized animal remains on the Property.

36. The following day, notice of the amendment to Rule 21 was posted in the mailroom and placed in each resident's mailbox.

37. The correspondence notifying residents of the change to Rule 21 states "upon consideration of recent and future sales/purchases of units in the building, Council decided to clarify and strengthen Rule 21."

38. On February 24, 2022, Ms. Guido revised her letter regarding Mr. Koffler's

disability and need for an emotional support animal. Ms. Guido's revised letter explains that she had been treating Mr. Koffler for panic attack symptoms, including racing heart, dizziness, difficulty breathing, and weakness, in addition to high levels of stress and anxiety for several years. Ms. Guido further explains that when Mr. Koffler is experiencing episodic acute anxiety or panic attacks due to his physiological response to stressful situations, a chemical imbalance causes his ability to think, sleep, work, and/or eat can and has been impaired and substantially limited for several hours. Ms. Guido clearly indicates that Mr. Koffler has a mental impairment which substantial limits one or more of his major life activities. Ms. Guido describes the calming effect that Mr. Koffler's emotional support dog provides through the outpouring of brain chemicals, including but not limited to oxytocin.

39. On March 1, 2022, the Council posted in the mailroom and distributed to all residents a letter stating that new owners that were moving into the building later that week sought a waiver to the building's No Pet Policy. The letter stated that the Council felt that it had no option but to draw up a Waiver policy, but that the new owner refused to agree to the conditions set forth. The letter further explained that the Council had questions about the new owner's medical letters, despite Defendant's Policy which states that information provided to the Council will be kept confidential. Specifically, the letter states, "Council has worked, this past month to do all it can to protect your rights and our rules, but we have no choice but to allow the new owner to have his dog at Grays Lane and in locations where he needs it."

40. After reading this letter, Mr. Koffler expressed the intention of selling the

condominium before he and Mr. Katz even moved in, as he no longer felt comfortable moving into Grays Lane.

41. The reputational harm stemming from the distribution of this letter has made Mr. Koffler's and Mr. Katz's residence at Grays Lane uncomfortable and uneasy. Publication of such confidential information is an egregious violation of Mr. Koffler's privacy. Further, the Defendant's disclosure of Mr. Koffler's need for an emotional support animal has triggered trauma responses in Mr. Koffler and has aggravated his anxiety.

42. The characterizations and posture of Defendant's March 1, 2022, letter pitted Defendant's residents against Mr. Koffler.

43. The Defendant's actions continued to delay and impede Mr. Koffler's ability to move into his new residence and/or caused unnecessary consternation and distress regarding same.

44. On April 18, 2022, Ms. Strauss sent Mr. Koffler a letter regarding his request for a reasonable accommodation. This letter spoke at length about individuals who receive fraudulent disability certifications for emotional support animals over the Internet by paying a fee, implying the possibility that Mr. Koffler engaged in such conduct.

45. Ms. Strauss's letter granted Mr. Koffler's request for a reasonable accommodation, but reiterated many of the terms and conditions set forth in the original waiver that Mr. Koffler refused to sign. Under threat of daily penalty if Mr. Koffler refused to sign it, this letter again requested Mr. Koffler to enter and exit the building with his emotional support animal through the garage or stairwells.

46. Mr. Koffler has had two hip replacements, making it difficult for Mr. Koffler to

enter and exit the building with his emotional support animal through the stairwells.

47. The April 18, 2022 letter repeats the requirement that Mr. Koffler must keep an air purifier and fan running in his home at all times and install a door sweep at the bottom of the doors of his unit.

48. The letter states that Mr. Koffler must double bag the dog's waste and dispose of it in one of the building's basement trash dumpsters or receptacles. The letter further requests that Mr. Koffler not walk his dog on the common patio and that he cover the floor of his unit's patio with a waterproof material or tarp.

49. The letter further states that:

Grays Lane would like to work with you in an effort (as best we reasonably can) to separate your animal from our residents with animal-related medical conditions and/or who chose to live in a "no pets" property.

50. On May 3, 2022, Ms. Strauss sent Mr. Koffler an email stating that she had not received a response from him regarding the second waiver. Ms. Strauss reiterated that a fine of $250 per day would be imposed upon Mr. Koffler for any day his emotional support dog resides at Grays House Lane without the Council's approval.

51. Mr. Koffler responded to Ms. Strauss's email acknowledging receipt of the second waiver.

52. On May 11, 2022, Mr. Koffler responded to Ms. Strauss advising that the Council's April 18th letter continued to subject him to discrimination and required him to agree to- and accept facts that he did not know to be true.

53. Mr. Koffler and Mr. Katz moved into their condominium, on May 12, 2022 without Mr. Koffler receiving approval of his emotional support animal from the Council.

54. Defendant's conduct has caused Mr. Koffler much emotional distress, anxiety and embarrassment.

55. Upon information and belief, Defendant has allowed other residents to have emotional support animals without imposing the same level of scrutiny upon such requests. Further, other residents who have been permitted to have emotional support animals/pets have not been subjected to the harassment and retaliation to which Mr. Koffler was and continues to be subject.

56. As a direct and proximate result of the Defendant's discrimination and retaliation, Mr. Koffler has experienced aggravation of his acute anxiety symptoms to the point where his medication is often ineffective. Mr. Koffler has also been suffering from insomnia.

57. Defendant's failure to accommodate Mr. Koffler has both caused and perpetuated emotional and economic harm to Mr. Koffler.

58. Defendant's subjecting Mr. Koffler to different terms and conditions has both caused and perpetuated emotional and economic harm to Mr. Koffler.

59. Defendant's subjecting Mr. Koffler to retaliation has both caused and perpetuated emotional and economic harm.

**COUNT I**
**FAIR HOUSING ACT, 42 § 3604(f)(3)**
***Failure to Reasonably Accommodate***

60. Plaintiff re-alleges and incorporates, by reference, each and every preceding paragraph as if fully set forth herein.

61. Plaintiff informed Defendant that he required an emotional support animal due to his disability as early as January 26, 2022.

62. With the intention of residing at Defendant's Grays Lane Condominium property, Plaintiff requested a waiver of Defendant's No Pet policy so that he could benefit from the emotional support and companionship that his dog provides, and thereby have an equal opportunity to use and enjoy the Defendant's available unit, common areas and premises at Grays Lane Condominium.

63. Initially, Defendant failed to respond to Plaintiff's follow up requests for a determination on the status of his requested accommodation.

64. When Defendant did respond to Plaintiff's request for a reasonable accommodation, it attempted to place unduly burdensome restrictions and conditions on Plaintiff's requested reasonable accommodation.

65. Defendant's failure to waive or modify its No Pet Policy in a reasonable manner to accommodate Plaintiff's disability is discriminatory and unlawful.

66. Less than a month after Plaintiff requested a reasonable accommodation, Defendant's Council amended its policy to include the imposition of a $250 per day fee for the presence of emotional support animals that have not been approved by the Council.

67. Presently, Defendant has not approved Plaintiff's dog as an emotional support dog and has threatened to impose a fee upon Plaintiff as long as Plaintiff's emotional support dog remains unapproved by the Council.

68. Defendant's undue delay in approving Plaintiff's request for a reasonable accommodation is discriminatory and unlawful.

69. Defendant's restrictions on Plaintiff's emotional support dog deny Plaintiff full use of the premises and the full support of his emotional support dog.

70. Despite the alleged allergies of other residents, Defendant had a duty to engage in an interactive process and provide Plaintiff with a reasonable accommodation for his disability.

71. As a direct and proximate result of Defendant's failure to accommodate, Plaintiff's ability to move into his new residence has been impeded, and/or associated with unlawful discrimination causing high levels of stress.

72. Plaintiff has suffered irreparable loss and injury including, but not limited to, mental anguish, emotional distress, pain and suffering, economic expense, and loss of his right to equal housing opportunities regardless of disability.

73. Plaintiff has been injured by Defendant's discriminatory conduct and, as a result, is an "aggrieved person" pursuant to 42 U.S.C. 3602(i).

74. Defendant's discriminatory conduct and actions were intentional, willful, knowing, taken in blatant disregard of Plaintiff's rights, and/or the product of deliberate indifference.

75. Pursuant to 42 U.S.C. § 3613(c)(1) and (2), Plaintiff prays for judgment as set forth below.

### COUNT II
### FAIR HOUSING ACT, 42 U.S.C. § 3617
### *Coercion, Intimidation, and Interference with Fair Housing Rights*

76. Plaintiff re-alleges and incorporates, by reference, each and every preceding paragraph as if fully set forth herein.

77. Plaintiff exercised his right to request a reasonable accommodation for his disability and to have an equal opportunity to use and enjoy housing pursuant to the Fair Housing Act.

78. After receiving Plaintiff's request, Defendant sought to impose unreasonable restrictions and terms on Plaintiff's use of Defendant's services and facilities including, but not limited to, requiring Plaintiff to dispose of his emotional support dog's waste off of Defendant's premises, requiring Plaintiff to keep an air purifier and fan running year-round, and prohibiting Plaintiff from accessing common areas and elevators with his emotional support dog.

79. Defendant further seeks to enforce indemnity and hold harmless provisions that would hold Plaintiff liable for any injuries attributable to the presence of Plaintiff's emotional support animal.

80. Defendant's waiver sought to segregate Plaintiff and his emotional support animal from other residents of the property.

81. Plaintiff advised Defendant that its waiver and conduct were unlawful under the Fair Housing Act.

82. Less than a month after Plaintiff requested a reasonable accommodation, Defendant's Council amended its policy to include the imposition of a $250 per day fee for the presence of emotional support animals that have not been approved by the Council.

83. Approximately one week after the Council's policy amendment, the Council distributed notice to all residents publicly disclosing Plaintiff's request for reasonable accommodation and stating its obligation to allow Plaintiff to possess an emotional support dog.

84. Defendant's public disclosure of Plaintiff's request for reasonable accommodation intimidated Plaintiff and meddled in Plaintiff's ability to exercise and enjoy the rights

granted to him under Sections 3603 through 3606 of the Fair Housing Act.

85. Presently, Defendant has not approved Plaintiff's dog as an emotional support animal and has threatened to impose a $250 per day fee upon Plaintiff for each day in which the Plaintiff's dog is not approved by the Council.

86. Defendant continues to seek to impose unduly burdensome restrictions and conditions on Plaintiff's reasonable accommodation and on the use and enjoyment of services and facilities provided by the Defendant.

87. Defendant's conduct was sufficient to intrude upon Plaintiff's well-being and tranquility and was sufficiently severe and pervasive as to create a hostile environment within the property.

88. Defendant's conduct towards Plaintiff and/or Plaintiff's rights amounted to coercion, intimidation and interference.

89. As a direct and proximate cause of Defendant's intimidating and interfering conduct, Plaintiff has suffered irreparable loss and injury including, but not limited to, mental anguish, emotional distress, pain and suffering, economic expense, and loss of his right to equal housing opportunity regardless of disability.

90. Defendant's intimidating and interfering conduct is a direct consequence of Plaintiff's exercise of his fair housing rights. Accordingly, Defendant's conduct constitutes unlawful interference in violation of 42 U.S.C. § 3617.

91. Pursuant to 42 U.S.C. § 3613(c)(1) and (2), Plaintiff prays for judgment as set forth below.

## COUNT III
## FAIR HOUSING ACT, 42 U.S.C. § 3604(f)(2)
### *Disparate Treatment Based on Disability*

92. Plaintiff re-alleges and incorporates, by reference, each and every preceding paragraph as if fully set forth herein.

93. Plaintiff has a disability-related need to live with an emotional support animal.

94. Plaintiff purchased an available condominium unit located on Defendant's property.

95. Plaintiff, intending to reside in the available condominium unit at Grays Lane House Association, provided Defendant with reliable verification of his disability and disability-related need for an accommodation.

96. Plaintiff's request for an accommodation was necessary in order to be afforded an equal opportunity to use and enjoy Defendant's property at Grays Lane House Association.

97. Defendant, after having received notice of Plaintiff's disability, discriminated against Plaintiff by imposing restrictions and conditions on the Plaintiff's use of services and facilities provided by Defendant that are not imposed on other residents of the Defendant's property.

98. Defendant sought to impose on Plaintiff indemnification and hold harmless agreements that impose liability upon Plaintiff for any injuries arising solely as a result of the presence of Plaintiff's emotional support dog. No other unit owners residing at Defendant's property are subjected to indemnification and/or hold harmless agreements that impose liability for their sheer presence.

99. As a direct and proximate result of Plaintiff's disability, Plaintiff was effectively segregated from elevators and other common areas, including outdoor patios.

100.     Defendant, by imposing restrictions and conditions on the Plaintiff's use and enjoyment of the property including, but not limited to, threatening to impose a $250 per day fee, has delayed Plaintiff's ability to reside in his condominium.

101.     Defendant has discriminated against Plaintiff with respect to the provision of services and facilities in connection with the condominium in which he  resides as a direct result of his disability.

102.     Defendant's discriminatory conduct and actions were intentional, willful, knowing, taken in blatant disregard of Plaintiff's rights, and/or the product of deliberate indifference.

103.     Pursuant to 42 U.S.C. § 3613(c)(1) and (2), Plaintiff prays for judgment as set forth below.

### COUNT IV
### FAIR HOUSING ACT, 42 U.S.C. § 3604(b)
### *Disparate Treatment Based on Sexual Orientation*

104.     Plaintiff re-alleges and incorporates, by reference, each and every preceding paragraph as if fully set forth herein.

105.     Upon information and belief, other residents of Defendant's property who were heterosexual and/or similarly requested accommodations were not subjected to the same unduly burdensome requirements and restrictions.

106.     Specifically, other residents who were heterosexual and/or similarly requested accommodations were not restricted from using the elevator and common areas, including outdoor patios, were not subject to indemnification and hold harmless language in waivers, were not required to have air purifiers and fans running in their unit year-round,

and were not required to place tarps over their patios.

107.    Further, other residents who were heterosexual and/or similarly requested accommodations were not the subject of embarrassing, humiliating public disclosures about their requests for reasonable accommodations, nor is it evident that such residents were subjected to such onerous and unreasonable restrictions and conditions on their use of the Defendant's services and facilities.

108.    Upon information and belief, there are at least two other residents of Defendant's property that possess animals in violation of Defendant's No Pet Policy.

109.    Upon information and belief, Defendant's discriminatory and unfavorable treatment is motivated by Plaintiff's sexual orientation.

110.    Defendant's discriminatory conduct and actions were intentional, willful, knowing, taken in blatant disregard of Plaintiff's rights, and/or the product of deliberate indifference.

111.    Pursuant to 42 U.S.C. § 3613(c)(1) and (2), Plaintiff prays for judgment as set forth below.

## COUNT V
### FAIR HOUSING ACT, 42 U.S.C. § 3604(c)
*Discriminatory Statement and/or Preference*

112.    Plaintiff re-alleges and incorporates, by reference, each and every preceding paragraph as if fully set forth herein.

113.    By the actions and statements set forth above, Defendant has:

a.    Discriminated against persons in the terms, conditions or privileges of a dwelling, or in the provision of services or facilities in connection with such

dwelling, because of handicap, in violation of 42 U.S.C. § 3604(f)(2);

b.      Refused to make reasonable accommodations in the rules, policies, practices, or services, when such accommodations may be necessary to afford equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B); and

c.      Made or caused to be made statements with respect to a dwelling that indicate a preference, limitation, or discrimination based on handicap or an intention to make any such preference, limitation, or discrim ination, in violation of 42 U.S.C. § 3604(c).

114.     As a result of the conduct or actions of the Defendant, Mr. Koffler has suffered damages and is an aggrieved person within the meaning of 42 U.S.C. § 3602(i).

115.     Defendant's discriminatory actions and statements as set forth above were intentional, willful, and taken in disregard for the rights of Mr. Koffler.

## PRAYER FOR RELIEF AS TO EACH COUNT

116.      WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A. An injunction against Defendant, its agents, employees, and successors, and all other persons in active concert or participation with it, from:

a.   discriminating on the bas is of disability in violation of the Fair Housing Act, as amended, 42 U.S.C. §§ 3601 et seq.;

b.   failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, Mr. Koffler to the position he would have

been in but for the discriminatory conduct; and

 c. failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of such conduct.

B. Declaring that Defendant's discriminatory housing practices, as set forth above, violate the FHAA;

C. A reasonable accommodation policy at The Grays Lane House that complies with the Fair Housing Act, as amended, 42 U.S.C. §§ 3601 et seq.

D. Granting Plaintiff the ability to possess an emotional support dog free of unduly burdensome or unreasonable restrictions or conditions;

E. Mandating that Defendant, at its own expense, undergo Fair Housing Act training provided by a HUD-approved entity;

F. Awarding Plaintiff all statutory damages under federal law;

G. Awarding Plaintiff compensatory and punitive damages for Defendant's discriminatory conduct;

H. Awarding Plaintiff his attorney's fees and costs incurred in bringing this action to enforce the FHAA; and

I. Granting such other and further relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff demands trial by jury.

ABARA LAW FIRM, PLLC.

By: _s/ Obinna I. Abara_____
OBINNA I. ABARA, ESQUIRE
Attorney I.D. No.:  204964
1950 Butler Pike, # 255
Conshohocken, PA 19428
(215) 360-3260
*Attorney for Plaintiff*

Date: _____5/15/2022_____

## VERIFICATION

I hereby verify that the statements contained in this **Complaint** are true and correct to the best of my knowledge, information and belief.  I understand that false statements herein are made subject to the penalties of Title 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

May 14, 2022
Date

Jonathan Koffler, Plaintiff

21